### George W. Gerrish v. Luther Towne.

It is no objection to a bill in equity, praying for the specific performance of an agreement to convey land, that it also alleges that the defendant purchased the land as the plain tiff's agent and with his money, and therefore holds it in trust for the plaintiff.

An agreement in writing to convey "the wharf and flats occupied by T. and owned by H." may be applied to the subject matter by parol evidence; and on parol proof that two lots of land, only one of which bounded on the sea, and was separated from the other by a street, were both at the time of the agreement, owned by H. and occupied by T. for the purpose of landing and storing wood and lumber, and known as T.'s wharf, and had, before the laying out of the street, formed parts of one entire lot, and been used together, and been occasionally covered with tide water, binds the party to convey both lots.

The filing of a general replication, in equity, gives no weight as evidence to an answer under oath, which had been expressly waived in the bill.

Bill in equity, filed on the 21st of February 1851. The bill alleged that on the 28th of January 1851 George H. Kuhn was seized in fee of a certain parcel of land in Chelsea, occupied as a wood wharf by the defendant and his partner, one Hardin, and lying upon both sides of Marginal Street; the portion on the southerly side of said street bounded southwesterly on the channel or low water mark; [both portions of which land were described in the bill by metes and bounds;] and that Francis Head was the real owner and had the control of said lots of land; that the plaintiff had previously been desirous of purchasing said two parcels of land, and for that purpose applied to the defendant, and employed him as agent and broker to purchase

Gerrish *v.* Towne.

said two lots of land for him ; and the defendant undertook said business and duty, and promised that he would act faithfully as agent and broker for the plaintiff in the premises, for a compensation of fifty dollars ; that on the said 28th of January the defendant informed the plaintiff that he had made an arrangement for the purchase of the aforesaid lots of land, at the price of eight thousand dollars, to be paid within thirty days from that date, and demanded of the plaintiff said compensation for this service, and the plaintiff paid it to him ; and the defendant, by his agreement in writing, under his hand, of that date, agreed with the plaintiff that, if he would pay him eight thousand dollars within thirty days from that date, he would convey to him the estates hereinbefore described ; and that on the 11th of February 1851, the plaintiff paid to the defendant the sum of eight thousand dollars, for the purchase of said lands above described, but that the defendant did not and has not conveyed to him the aforesaid lands, although requested so to do, but has refused to convey the same ; that the defendant, regardless of his duty as agent and broker for the plaintiff, and of the trust and confidence aforesaid, designedly and fraudulently deceived and imposed upon the plaintiff, and pretended that Head and Kuhn would not convey the whole of the land above described, but only the part south of Marginal Street, and fraudulently persuaded the plaintiff to pay said sum of eight thousand dollars, and to receive a deed of that part only of said estates ; that Head and Kuhn did in fact convey the whole of said land lying north and south of Marginal Street, for said sum of eight thousand dollars ; but the defendant, for the purpose of deceiving the plaintiff, took two separate deeds of the same to himself, and took the conveyance of the land north of Marginal Street for the nominal sum of one dollar ; that the defendant now is the holder of the legal title to the part of said premises lying north of Marginal Street ; that the plaintiff's money was paid for the same to Head and Kuhn ; and that by reason of the payment of the price aforesaid, and of the confidential trust and employment of the defendant, and of the contract as aforesaid made by him, he is holder in trust only of said portion of said premises, and ought in equity to be held

to convey the same to the plaintiff; yet that the defendant contriving and intending to defraud the plaintiff of said lands, wholly refuses to execute a deed of the same to the plaintiff, though requested so to do, and although a deed thereof has been tendered to him for execution. The plaintiff, waiving an answer under oath, then prays that the defendant may be compelled specifically to perform his agreement with the plaintiff, and to convey that part of said estates above described, lying north of Marginal Street; and for further relief.

The defendant, in his answer, alleged that in October 1850, or earlier, the defendant asked Head, who took charge of said estates, at what price he would sell the same, and Head, after consulting with Kuhn, offered to sell the said two parcels of land to the defendant, for the sum of eight thousand dollars in cash; that he was not then able to accept of said offer, but that, considering the said wharf and flats alone to be worth that sum, he did apply to various persons, and among others, to the plaintiff, to purchase said wharf and flats, of him (the defendant) for that sum, and exhibited to the plaintiff a plan of said wharf and flats, but not of said other parcel; and on the 28th of January 1851, at the plaintiff's request, the defendant, by his agreement in writing by him signed, agreed to give to the plaintiff the refusal of said wharf and flats, but not of said other parcel, at said price, for the space of thirty days, in consideration of the sum of fifty dollars therefor paid to the defendant, which said agreement is as follows: " Boston, January 28th 1851. In consideration of fifty dollars, I agree to convey to G. W. Gerrish the wharf and flats occupied by Towne & Hardin, and owned by Francis Head, any time within thirty days from date, on the payment of eight thousand dollars in cash, the premises to be free from all incumbrance." That the plaintiff signed no agreement to purchase said estate, and was not bound to take the same, and that no representation was made to him that the said estate included the parcel of land on the north side of said Marginal Street; but, on the contrary, the defendant expressly told the plaintiff that said other parcel of land was not for sale; that on or about the 11th of February 1851 the plaintiff decided

to purchase the said wharf and flats; and thereupon the defendant procured Kuhn to execute to the defendant deeds of quit-claim and release of said two parcels of land, and Head to execute to him other deeds, without warranty, of his right in and to the same; and the defendant on the said 11th of February conveyed to the plaintiff the said wharf and flats by a deed containing covenants of warranty; and the plaintiff, by an indenture bearing date the 12th of said February, made a lease to the defendant of said wharf and flats, describing the same as " a certain wharf in Chelsea, with the flats thereto belonging, bounded on Marginal and Pearl Streets, in said Chelsea, being part of the same premises now occupied by Towne & Hardin." And the defendant denied ever to have made with the plaintiff any such agreement as is described in the bill, or any other agreement than that above set forth, and which he has already specifically performed. And the defendant alleged that when he obtained from Head the terms upon which he would sell said two parcels of land, he did not know that the plaintiff was desirous to purchase the same, or either of them, nor had he any knowledge thereof until he applied to the plaintiff to purchase said wharf and flats, when he informed the plaintiff that the other parcel was not for sale; and he denied that the plaintiff ever employed him as his agent or broker in the premises, or that he ever undertook to act as such, or received any compensation as such, and alleged that all the dealings between him and the plaintiff were conducted and understood to be between them as principals; and that the plaintiff obtained, by the conveyance made to him as aforesaid, all that the defendant ever agreed to sell to him, and all that the plaintiff ever expected to buy; that it plainly appears on the face of the bill, that this court has no jurisdiction over the case made thereby; that the plaintiff has not, by his bill, made such a case as entitles him to any relief against the defendant; and the defendant prays the same benefit of this defence as if taken by way of demurrer.

The plaintiff filed a general replication.

A hearing was had before *Bigelow,* J. who reported the case,

with the consent of the parties, to be submitted to the whole court. The evidence is sufficiently stated in the opinion.

*R. Choate & H. F. Durant,* for the plaintiff.

*C. G. Loring & F. C. Loring,* for the defendant.

The opinion was delivered at March term 1855.

BIGELOW, J. The bill in equity in this case seeks to obtain from the defendant the conveyance of a piece of land in Chelsea, which the plaintiff claims under the following contract: "Boston, January 28th 1851. In consideration of fifty dollars, I agree to convey to G. W. Gerrish, the wharf and flats occupied by Towne & Hardin, and owned by Francis Head, any time within thirty days from date, on the payment of eight thousand dollars in cash, the premises to be free from all incumbrance. Luther Towne."

The bill is framed with a double aspect, and alleges the right of the plaintiff to the conveyance which he seeks, on two grounds. The first is, that, by the terms of the contract itself, the defendant is bound to convey the property in question, and that a court of equity will decree its specific performance. The second is, that, by reason of a confidential relation of agency or brokerage subsisting between the parties, and the payment of the plaintiff's money for the lot of land in question, a resulting trust is created in favor of the plaintiff, which the court will enforce by a decree for the conveyance of the property by the defendant to the plaintiff. An objection was taken to the form of the bill, on the ground that it was inconsistent in its allegations, and if maintained at all, could not be supported as a bill for specific performance. But upon looking at the bill, we think it sufficiently sets out in its stating part a contract on the part of the defendant for the conveyance of property, which it prays to have performed. It is true that it also alleges an agreement between the parties, and acts done in pursuance of it, by which a trust is sought to be established, under which the plaintiff claims a conveyance of the same estate. This is entirely consistent with the established rules of equity pleading A party may well frame his bill in an alternative form, and aver facts of a different nature in its support. If the title to relief

will be the same in either alternative, the bill can be maintained, although the case is presented upon allegations resting on entirely distinct and independent grounds. Story Eq. Pl. § 254. 1 Dan. Ch. Pract. 395.

The right of the plaintiff to the specific performance which he seeks in the present case depends upon the true construction of the contract between the parties. The plaintiff contends that " the wharf and flats occupied by Towne & Hardin, and owned by Francis Head," include a parcel of land lying north of Marginal Street, and separated by said street from the property already conveyed to the plaintiff by the defendant. The defendant, on the other hand, alleges that by the conveyance executed and delivered by him to the plaintiff, of the estate lying South of Marginal Street, he has fully complied with the terms of the contract; and that the lot of land lying north of said street is not included in the description of the estate which he agreed to convey to the plaintiff.

It is quite obvious that the issue thus made between the parties cannot be determined by reference solely to the terms of the written contract. These are sufficiently intelligible, and by themselves present no patent ambiguity. If any doubt exists in respect to them, it arises from extrinsic facts, and creates a case of latent ambiguity which renders parol evidence admissible to aid in its construction. The rule of law applicable to cases of this kind is very familiar. Whenever, in a contract or conveyance, an estate is specifically and fully described by monuments, bounds and admeasurements, no evidence dehors the writing can be admitted to show the intention of the parties in making the contract or conveyance, or to prove what estate is comprehended by the written description. But where general terms only are used to designate the subject matter of the agreement or conveyance, or the description is of a nature to call for evidence to ascertain the relative situation, nature and qualities of the estate, then parol evidence is not only admissible, but is absolutely essential to ascertain the true meaning of the instrument, and to determine its proper application with reference to extrinsic circumstances and objects. In such cases parol evi-

dence is not used to vary, contradict or control the written contract of the parties, but to apply it to the subject matter, and thereby to render certain what would otherwise be doubtful and indefinite. For this reason, any evidence which tends to indicate the nature of the subject matter included in a written contract, which would otherwise be uncertain or ambiguous, and to determine its application relatively to other objects, is admissible, as affording just means of interpretation of the intention of the parties. In the application of this general rule, it has therefore been held competent for parties to a written contract to show in aid of its interpretation the position of land and its condition, the mode of its use and occupation, that it had acquired a local designation or name by which it was known and distinguished, and also to show whether it was parcel of a particular estate. 1 Greenl. Ev. §§ 286, 288. *Smith* v. *Jersey*, 2 Brod. & Bing. 553. *Paddock* v. *Fradley*, 1 Cr. & J. 90. *Murly* v. *M'Dermott*, 8 Ad. & El. 138. *Waterman* v. *Johnson*, 13 Pick. 261. *Brown* v. *Thorndike*, 15 Pick. 400. *Sargent* v. *Adams*, *ante*, 79. By the terms of the contract in question, it is clear that the land included in the written contract can be ascertained only by resort to extrinsic facts. " The wharf and flats occupied by Towne & Hardin, and owned by Francis Head," is a general description referring to extrinsic objects and circumstances, which renders it necessary to resort to parol evidence to prove the existence of the facts by which alone this description can be applied to its subject matter.

This rule of evidence is not disputed by the counsel for the defendant, but it is urged that it has no application to the case at bar. It is not denied that if the question at issue was solely as to the lot of land lying below Marginal Street, it would be competent for the plaintiff to show by parol proof what were the wharf and flats occupied by Towne & Hardin, because these words, taken in their strict primary sense, are sensible with reference to extrinsic circumstances, and are directly applicable in all respects to that parcel of land. But it is argued that it would tend directly to vary and control the written contract, to admit evidence to show that the piece of land lying north of Marginal

Street was included in these terms of description, because it would prove that the words were used in an unusual and secondary sense, so as to include a separate tract of upland which can in no proper sense be described as wharf and flats. This position would be decisive of the question if it were supported by the facts in proof. It is true that the two pieces of land are now separated by a street, and that the upper parcel, which is the subject of controversy, is thereby cut off from immediate access to the water, so that vessels cannot be unloaded directly upon it. But it is also true that it is proved by the testimony in the cause that prior to 1836 or 1837, when Marginal Street was built, the two pieces constituted one entire parcel of land ; that they have for many years been used together; and that, before the street was built, the whole of the upper parcel above the street was covered with water at very high tides, and a part of it was so covered at all ordinary tides; that both parcels have been filled up, and for many years have been occupied for the purpose of receiving wood and lumber from vessels, and storing it for sale. Upon this state of facts, we think the parol evidence does not prove that the words "wharf and flats," in order to be applicable to the upper lot, must be used in any unusual or secondary sense ; but that it tends to show that they were primarily sensible with reference to the upper as well as to the lower parcel. For these reasons, we are of opinion that the parol evidence offered by the plaintiff was competent and admissible for the purpose of showing that the upper lot was intended by the parties to be included in the term "wharf and flats" used in the written contract.

The question still remains as to the effect of the evidence offered by the plaintiff to show that the upper lot was comprehended in the description of the land which the defendant agreed to convey to him. Upon a careful scrutiny of the testimony, and laying aside that portion of the evidence which was given by the near relatives of the plaintiff, we think it is satisfactorily proved, in addition to the facts already enumerated, that both parcels of land, having long been used and occupied together for the landing of wood and lumber, and its storage and sale,

were for many years generally known as and called in the vicin-
ity "Towne & Hardin's wharf;" that they were so designated by
the defendant and his copartner; and that the wood and lumber
lying thereon had been insured by the defendant, and described in
the policy as being on Towne & Hardin's wharf. Besides, and
this perhaps is the most significant evidence, it appears by the
testimony of Head, the original owner of the estate, that in the
agreement which he gave to the defendant in the winter of 1851
for the conveyance of these premises, in pursuance of which the
entire estate was conveyed to the defendant in February follow-
ing, the same words "wharf and flats" were used to designate
both parcels. This fact far outweighs any inference which can
be drawn from the leases made by Kuhn to the defendant and
his copartner in the years 1843 and 1845, in which the premises
are described separately, the lower lot as wharf and flats, and
the upper parcel as a piece of land. It shows the understanding
of the defendant as to the meaning of these words at the time
when the written agreement was given by him to the plain-
tiff, and that they were then used to designate both parcels.
That such was the full understanding between the parties is also
shown by the studious care with which the defendant kept from
the plaintiff's knowledge the fact that the upper parcel had been
conveyed to him by Head by a separate deed, on the same day
as that on which the deed of the lower lot was executed, and his
subsequent representation, as testified to by Hubbard, that he
was unable to procure a deed of the upper lot for the plaintiff,
but that it was a gift to him from Head. We cannot think any
great weight is to be attached to the fact that the defendant
gave to the plaintiff a warranty deed of the lower lot, of which
he had only taken a deed of release and quitclaim from Head.
It does not appear that there was any doubt concerning the title,
or that any importance was attached to the form of the deed, at
the time, by the plaintiff or defendant.

It was urged by the defendant, that the acceptance by the
plaintiff of the deed of the lower lot, with a full knowledge that
it conveyed only that lot, was not only conclusive evidence
of his understanding of the terms used in the contract, but

estopped him from setting up any claim under it to a convey-anèe of the upper parcel. This would be a sound, and perhaps a conclusive answer to the plaintiff's case, if we were not satis-fied that the plaintiff received the deed under a misapprehension, induced by the statements of the defendant that he had been unable to procure a conveyance of the upper lot. This ap-pears from the evidence of Hubbard, an impartial and disin-terested witness, who in this particular corroborates fully the evidence of Benjamin T. Gerrish, the plaintiff's brother. The plaintiff, having acted under a mistake of facts caused by the misrepresentations of the defendant, in taking the deed of the lower lot, cannot be held to have waived any of his legal rights, or to be estopped from enforcing them as against the defendant.

Without going more at large into the case, it is sufficient to say that, for the reasons already given, we are of opinion that the parol evidence was competent and admissible for the pur-pose of enabling the court to apply the terms of the written contract to the subject matter; that upon this evidence we are satisfied that both parcels were included within the term " wharf and flats," and that the original intention of both parties was to embrace both parcels in the agreement for a conveyance; that the defendant is not estopped by any act of his from claiming a full performance of the agreement from the defendant, and is en-titled to a decree for a conveyance of the upper lot, as prayed for in his bill. It therefore becomes unnecessary to express any opinion upon the other branch of the case.

One question of practice was raised in the argument, upon which it may be well to express an opinion. The plaintiff in his bill waived the oath of the defendant to the answer. The defendant, notwithstanding this express waiver, answered under oath. The plaintiff, without moving the court for the cancella-tion of the oath, filed a general replication. A general replica-tion waives all insufficiencies and defects in the answer; but it does not at all affect the question of its competency as proof of the facts and statements which it contains. Such indeed is the necessary effect of the rule itself, which provides that when the

plaintiff waives the necessity of the answer being made on the oath of the defendant, " the answer *may* be made without oath, and *shall* have no other or greater force as evidence than the bill." Fifth rule in chancery of this court, 24 Pick. 411

*Specific performance decreed.*